NEW JERSEY DEPARTMENT OF LABOR,
WORKMEN'S COMPENSATION BUREAU.

PATRICK BREHENY, PETITIONER, v. COUNTY OF ESSEX,
AND BANKERS INDEMNITY INSURANCE CO., RE-
SPONDENTS.

Decided July 14, 1943.

For the petitioner, *David Roskein.*

For the respondent, *Edwin Joseph O'Brien.*

An employee's claim petition for compensation was filed by Patrick Breheny, petitioner in the above entitled matter alleging *inter alia* that his incapacity has increased since the prior adjudication of his claim for compensation on March 15th, 1940. This matter came on to be heard before me, Harry S. Medinets, a Deputy Commissioner of Compensation, in the presence of David Roskein, attorney for peti-titioner, and Edwin Joseph O'Brien, attorney for respondent.

The testimony of petitioner, Patrick Breheny, was taken *de bene esse* and the stenographic transcript was received in evidence at the time of the hearing, inasmuch as it appears that he was confined to his home and unable to appear in court. The uncontroverted testimony of the petitioner dis-

closes that following the adjudication of this case in March 15th, 1940, he remained in the employ of the respondent in the performance of only light duties until the early part of June of that year, when, as a result of his physical condition he was compelled to cease work completely. Since that time, petitioner has been confined to his home and for the last five months confined to his room under the care of Dr. Mulligan. Although Mrs. Breheny, wife of the petitioner, appeared prepared to testify in support and in corroboration of her husband's testimony, the attorney for the respondent waived formal proof and conceded the factual effect of her proffered testimony.

On behalf of the petitioner, there was adduced the testimony of Dr. Jerome Kaufman a recognized cardiologist. He had occasion not only to make a complete physical and cardiological examination but also to take electrocardiograms and make other diagnostic tests in order to determine the petitioner's present condition. It was the opinion of this doctor that the petitioner is totally and permanently disabled. From the facts submitted in a hypothetical question based on the evidence adduced at the time of the prior hearing, a study by Dr. Kaufman of the electrocardiograms offered in evidence in that proceeding, and a consideration of his own medical findings on examination and test, this expert was of the opinion that the petitioner's incapacity, to the extent previously determined by this court as resulting from the accident of May 18th, 1938, had substantially increased.

It will be noted that the respondent does not presently contend that the petitioner is not totally incapacitated, nor has there been offered any proof, medically or lay, to controvert that fact. The contention of the employer from a medical standpoint appears to be that this complete incapacity is not causally related to the compensable accident. There appeared and testified on behalf of the respondent Dr. Harry A. Jaffe, an outstanding physician and surgeon of New York City, Dr. Joseph Doane, a specialist in internal medicine in New York City, and Dr. Leon Lewis, a registered pathologist of Newark, New Jersey. It was the opinion of Dr. Jaffe, based upon the facts set forth in the hypothetical question

propounded by the respondent's counsel, that the increase in the petitioner's incapacity was not attributable to the accident of May 18th, 1938, or to its *sequeli*. This physician felt that the petitioner had recovered from the effects of the said accident, the coronary occlusion, and that the symptoms which now disable him are due to the natural progress of his underlying arteriosclerosis. Dr. Jaffe was joined in this view by Dr. Doane, who rendered the opinion that the physical retrogression of the petitioner's condition was the inevitable result of the sclerosis of his cardiac vessels and was not due to the coronary occlusion which has heretofore been judicially determined to be the result of said accident. Dr. Leon Lewis, who had occasion to examine the petitioner at the time of the prior trial hearing, as well as shortly before the present trial, did not in any manner dispute the contention advanced on behalf of the petitioner that he is presently totally disabled. The report of Dr. Asher Yaguda, who was in the military service and unable to appear in court was offered in evidence by the respondent and upon consent of the petitioner's counsel its contents were included in the record with the same effect as if this physician appeared personally and testified.

It is to be observed that neither Dr. Jaffe nor Dr. Doane ever examined the petitioner and that their expert opinions were based solely upon the facts submitted to them by counsel in the form of hypothetical questions. It is fairly discernable from their testimony that the medical experts of the respondent predicated their opinions on the assumption that the petitioner, having returned to light work as a painter's helper and continued as such from November, 1938, to early June, 1940, a period of approximately eighteen months, he therefore had recovered from the effects of the coronary occlusion. However, from a careful consideration of the entire record I am unable to discern testimony upon which this assumption can reasonably be based. The evidence is to the contrary. Even at the time of the prior adjudication the petitioner was still suffering from the effects of the coronary occlusion, and, as previously determined, was disabled by reason thereof to the extent of 40% partial permanent total. The undisputed

testimony on the present application in the case that the same symptoms continued to manifest themselves following the earlier hearing and within four months thereafter the petitioner was finally compelled to cease work completely. In this posture of the proofs it is difficult for the court to accept the theoretical premise of the respondent's experts that the petitioner had fully recovered from his coronary occlusion. Quite the contrary, it is well within the range of reasonable probability to conclude that a causal relationship exists between the physical incapacity which necessitated a complete cessation from work four months after the last adjudication following which there was a continuity of the very symptoms which this court previously found to be attributable to the traumatic insult to the underlying arteriosclerotic cardiovascular system of the petitioner which produced the spasm of the coronary artery and a resultant coronary thrombosis.

It is legally well settled that at a hearing, based on a claim for an increase in disability, the judgment of the Bureau with respect to the earlier trial is *res adjudicata* of the nature and extent of the disability then existent. *Cirillo* v. *United Engineers and Constructors, Inc.,* 120 *N. J. L.* 225; 198 *Atl. Rep.* 768; *Rotina* v. *J. P. Scanlon, Inc.,* 125 *N. J. L.* 227; 15 *Atl. Rep.* (2d) 336, 752.

On the occasion of the earlier trial before me, the petitioner had already resumed work, confining himself "to the lighter duties of his trade." I then found, and nothing has been shown in the present proceeding to discard that conclusion, that "the symptoms attributable to the said condition [coronary occlusion] have persisted to a marked degree and he [petitioner] is presently suffering from the affects of the said accident ` * * *" "I therefore conclude that the petitioner's disability attributable to the compensable accident was equivalent to 40% of partial total permanent." The evidence adduced at the present trial shows without contradiction that the same cardiac symptoms which I found were due to the accident, continued to distress the petitioner with the result that some four months after the first adjudication he was obliged to completely stop work and from that time

up to the present he has been wholly and completely incapacitated and of late a room confined invalid. Concededly, the incapacity of the petitioner has increased to a point where he is without dispute totally and permanently disabled. Considering the petitioner's apparent good health and unimpaired capacity for work prior to the accident, and in the light of subsequent developments it is inconceivable that the traumatic episode was not the outstanding factor in the enlarged existent total disability. *Kolesnik* v. *Irvington Varnish and Insulator Co.,* 120 *N. J. L.* 8; 197 *Atl. Rep.* 727; *Davis* v. *Lotz,* 126 *N. J. L.* 615; 20 *Atl. Rep.* (2d) 602.

The rule is clear that the burden of proof is on the petitioner in an application to establish and obtain an increase in disability. *Rotina* v. *Scanlon, supra; Pasquale* v. *Clyde Piece Dye Works,* 120 *N. J. L.* 557; 1 *Atl. Rep.* (2d) 45. From a consideration of all the testimony adduced and the reasonable inferences drawn therefrom, I am constained to the opinion and find that the petitioner here has sustained the burden of establishing, by a fair preponderance of the credible testimony, that his disability has increased since the adjudication of March 15th, 1940, and that his present incapacity which was total in quality and permanent in character, bears a causal relationship to the compensable accident of May 18th, 1938. The respondent, in my opinion, has failed to carry the burden of proving that the admitted increase in the petitioner's disability is due to a cause other than that claimed by the employee. *Atchison* v *Colgate,* 102 *N. J. L.* 425; 131 *Atl. Rep.* 921.

It is, therefore, * * * ordered that judgment be and the same hereby is entered in favor of Patrick Breheny and against the County of Essex and Bankers Indemnity Insurance Co.

*      *      *      *      *      *      *

HARRY S. MEDINETS,
*Deputy Commissioner.*